UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| PAUL EDWARD HURD, | ) | CASE NO. 1: 12CV02037 |
| | ) | |
| Plaintiff, | ) | JUDGE DONALD C. NUGENT |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| CORRECTIONS OFFICER POLVERINE, | ) | |
| et al. | ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the Court on the Motion for Summary Judgment (ECF #37) of Defendants Corrections Officer Polverine, Lieutenant Kathy Rose, Deputy Jonovich, Deputy Frank Tapia, Sheriff Daniel McClelland, John Does 1-10, and The Geauga County Board of Commissioners on Plaintiff Paul Edward Hurd's Amended Complaint. Defendants have moved for judgment on all counts of the Amended Complaint.

The Amended Complaint generally alleges an action for Defendants' treatment of Plaintiff while he was being held in the Geauga County, Ohio Jail following his arrest for two DUIs in July of 2011. Plaintiff generally alleges that: he was denied necessary medical care; he was subject to excessive force; certain of Defendants failed to intervene to prevent his alleged mistreatment; and Defendants had in place practices, policies and customs, which were known and ratified by them, that resulted in the alleged violations of Plaintiff's civil rights.

The Amended Complaint is brought under 42 U.S.C. § 1983 and laws of the State of Ohio. It contains five counts as follows:

1

(1) **Count One (42 U.S.C. § 1983).** Plaintiff alleges actions and omissions that violated his Eighth Amendment right to be free from cruel and unusual punishment, the right to be protected, and the right to receive adequate medical care while incarcerated. Plaintiff further alleges violations of his Fourteenth Amendment right to due process and equal protection of the laws. Plaintiff also contends that the "rules, regulations, customs, policies, procedures, and/or training of Defendants were inadequate and unreasonable and were the proximate causation resulting in the Constitutional deprivations suffered by Plaintiff."

(2) **Count Two (42 U.S.C. § 1983).** Plaintiff alleges that his Eighth Amendment right to be free from cruel and unusual punishment and to be free from excessive and unreasonable force were violated.

(3) **Count Three (Assault and Battery).** Here, Plaintiff claims that Corrections Officer Polverine assaulted and battered Plaintiff, and that, as a consequence, Plaintiff suffered extreme pain and permanent injuries.

(4) **Count Four (Intentional and/or Negligent Mistreatment).** This Count alleges intentional and negligent acts, and further alleges willful, malicious violation of Plaintiff's legal rights.

(5) **Count Five (Spoliation).** Plaintiff claims that Defendants have destroyed evidence, consisting of recordings of the jail, which "obstructed justice and the rights of Plaintiff to pursue his claims" against Defendants.

Plaintiff seeks compensatory and punitive damages, attorney fees and an order enjoining Defendants from the conduct alleged.

Plaintiff has responded to the Motion for Summary Judgment, Defendants have replied, and Plaintiff has filed a surreply. Thus, the Motion is ripe for consideration. For the reasons stated herein, Defendants' Motion for Summary Judgment is **GRANTED IN PART** and **DENIED IN PART**.[1] The Court will issue a separate Trial Order

---

[1] It appears that Deputy Jonovich was not served with Plaintiff's Amended Complaint. Accordingly, notwithstanding the Court's analysis below, summary judgment is awarded to Deputy Jonovich on all counts of the Amended Complaint.

## I. <u>LEGAL STANDARD</u>

Summary judgment under Rule 56 is appropriate where the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits show "that there is no genuine dispute as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed .R. Civ. P. 56(a). "The moving party has the initial burden of proving that no genuine issue of material fact exists," and the court must draw all reasonable inferences in the light most favorable to the nonmoving party. *Vaughn v. Lawrenceburg Power Sys.*, 269 F.3d 703, 710 (6th Cir. 2001). When a motion for summary judgment is properly made and supported and the nonmoving party fails to respond with a showing sufficient to establish an essential element of its case, summary judgment is appropriate. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23 (1986).

With regard to the non-moving party's obligation to set out specific facts showing a genuine issue for trial, "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Williamson v. Aetna Life Ins. Co.*, 481 F.3d 369, 379-80 (6th Cir. 2007) (citation omitted). Rather, "Rule 56 allocates that duty to the opponent of the motion, which is required to point out the evidence, albeit evidence that is already in the record, that creates an issue of fact." *Id.*

Accordingly, the ultimate inquiry is whether the record, as a whole, and upon viewing it in the light most favorable to the non-moving party, could lead a rational trier of fact to find in favor of the non-moving party. *Matushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87. The Court's inquiry, therefore, asks whether reasonable jurors could find by a preponderance of the evidence that the non-moving party is entitled to a verdict. *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

## II. FACTS

Plaintiff was arrested for two DUIs in July of 2011. He was sentenced in October of 2011 to one year in jail with eight months suspended by the Chardon Municipal Court.[2] He was drinking about a 12-pack of beer a day at the time of the offenses, and had a history of alcohol abuse.

Following his arrest, Plaintiff admitted himself into a hospital for treatment on July 7, 2011. On or about July 12, 2011, Plaintiff was released from the hospital and immediately committed to the Geauga County jail by the Chardon Municipal Court.

Plaintiff testified that he recalls that, during the July 7 through July 12 hospital admission, he gave a history to the hospital of falling in his apartment. According to Plaintiff, he hit everything on his body and landed on something, and probably hit his right hip. He was having pain on his right side. He was restrained for his protection in the hospital after his July 7 admission, because he was getting up and wandering away. At the hospital he was delirious and was going through alcohol withdrawal. He remembers having delirium tremens but does not remember being in restraints. Hospital records show that Plaintiff was discharged unsteady on his feet and with a risk of falling.

---

[2] It appears that Plaintiff was sentenced to jail time in March of 2014 by the Chardon Municipal Court for a third DUI, and served part of his sentence before being granted early release (Case No. 2014 TR C 00631). That period in jail is not relevant to the Motion currently under consideration.

When Plaintiff arrived at the Geauga County jail, the jail nurse diagnosed Plaintiff with a staph infection in his arm where an IV had been inserted during his hospital stay, and placed him on antibiotics. The jail doctor examined Plaintiff's arm on July 16. Plaintiff admits that no medical practitioner has ever told him that Defendants' actions or inactions caused him to have a staph infection. When Plaintiff later was admitted to University Hospitals on July 19 for unrelated issues, the staph infection had cleared up.

Plaintiff claims that he was in pain from his arm on July 17, and that he used the intercom in his cell to communicate with Defendant Polverine that he needed medical attention. Defendant Polverine apparently disputes that Plaintiff sought medical attention. Defendant Polverine claims that he repeatedly told Plaintiff to stop using the intercom, because the intercom is for emergency purposes only. Only Defendant Polverine heard Plaintiff's communications over the intercom. There is no dispute among the parties that Plaintiff was distressed, hallucinating, and acting in a confused manner at this time. Indeed, Plaintiff testified that he was hallucinating throughout his time in jail.

After Defendant Polverine told Plaintiff to stop using the intercom, Plaintiff used it again. At this point, the parties' factual accounts diverge significantly.

Generally, Plaintiff claims that Defendant Polverine came to his cell alone, opened the cell door, crouched down, and launched himself at Plaintiff like a missile, knocking Plaintiff forcefully to the floor. Plaintiff claims that Defendant Polverine's actions were intended as a form of punishment for using the intercom. Although Plaintiff admits to hallucinations, memory gaps, and confusion during his entire time in jail, he claims to remember this incident clearly.

Defendant Polverine's account paints a different picture. Defendant Polverine claims

that, having detected Plaintiff's agitation, he went to Plaintiff's cell to calm him down. According to Defendant Polverine, when he opened the cell door, Plaintiff tried to leave the cell. At this point, Defendant Polverine contends that he attempted to restrain Plaintiff, and they both fell to the ground.

After the incident, Plaintiff's hip was bruised, he had a bump on his head, and he had to be helped up. Defendant Tapia spoke to Plaintiff after the incident. Plaintiff claims that he stated that his hip was broken. Defendants claim that Plaintiff did not complain of pain or injury.

The next day, July 18, Plaintiff complained of some discomfort in his hip. He was seen by the jail registered nurse. Plaintiff walked to the jail medical clinic from his cell. Although Plaintiff was ambulatory, he was incoherent at the time.

The jail doctor saw Plaintiff on July 19. The doctor sent Plaintiff by ambulance to the U.H. Geauga Hospital, for confusion and complaint of hip pain. At the hospital, Plaintiff was treated for a broken hip by Dr. Harmat. Dr. Harmat performed a hip replacement surgery on Plaintiff on July 21, 2011. Dr. Harmat also provided an expert report in this case. Dr. Harmat testified that the fracture was not acute, and that the ends were blunted, indicating that it was not extremely recent. Dr. Harmat testified that the injury could have happened two to four weeks before the surgery. Dr. Harmat admits that he cannot pinpoint exactly when the hip fracture occurred. Although the fracture occurred from some sort of trauma, Dr. Harmat could not say what that trauma was. Dr. Harmat did not know about Plaintiff's claim during his previous hospital stay between July 7 and July 12 that he had fallen on his hip. Dr. Harmat is unable to say with reasonable medical certainty that the fracture that he saw and treated on July 21, 2011 occurred on July 17, 2011, or that it occurred during contact between Plaintiff and Defendant

Polverine.

Dr. Harmat testified that Plaintiff was unable to communicate, and could not give a medical history on July 19. Plaintiff was hallucinating when he arrived at the hospital. Among other things, Plaintiff told the emergency room doctor that he was at Lake Lucerne climbing a ladder, and that he fell and broke his hip.

An investigation into the July 17 incident between Plaintiff and Defendant Polverine at the jail was conducted by Sergeant Batchelor. Defendant Lt. Rose was ultimately responsible for the investigation. The investigation concluded that there was no excessive force used against Plaintiff. Neither Plaintiff nor Defendant Polverine was interviewed as part of the investigation. The determination of no excessive force was based on Sergeant Polverine's substantive statement.

A camera exists in Plaintiff's cell and in the jail intake area that would have filmed at least some of what occurred on July 17. Defendants did not keep any tape of the incident with Plaintiff. Plaintiff claims that Defendants' policy is to keep video evidence after a use of force.

### III. ANALYSIS

#### A. Plaintiff's Section 1983 Claims For Denial Of Medical Treatment Fail As A Matter Of Law

Count I of the Amended Complaint alleges a claim under 42 U.S.C. § 1983 for the alleged denial of medical treatment. Plaintiff claims that he was denied adequate medical treatment for (1) the staph infection in his arm, and (2) injuries following the July 17 incident with Defendant Polverine.

To prevail on a Section 1983 claim, a plaintiff must establish two things. First, a plaintiff must show the deprivation of a right secured by the Constitution or laws of the United States.

Second, a plaintiff must demonstrate that the deprivation was caused by a person acting under state law. *Sigley v. City of Parma Heights*, 437 F.3d 527, 533 (6th Cir. 2006).[3]

Here, Plaintiff contends that he was subject to cruel and unusual punishment in violation of the Eighth Amendment to the Constitution. The Eighth Amendment "forbids prison officials from 'unnecessarily and wantonly inflicting pain' on an inmate by acting with 'deliberate indifference' toward [his] serious medical needs." *Blackmore v. Kalamazoo County*, 390 F.3d 890, 895 (6th Cir. 2004) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). As a pretrial detainee at the time of the alleged offenses, Plaintiff is analogously protected under the Due Process Clause of the Fourteenth Amendment.

A Section 1983 claim asserting a constitutional violation for the denial of medical care has subjective and objective components. *Jones v. Muskegon County*, 635 F.3d 935, 941 (6th Cir. 2010) (citations omitted). The objective component requires the existence of a "sufficiently serious" medical need. *Farmer v. Brennan*, 511 .S. 825, 834 (1994). A "sufficiently serious" medical need is defined as one that either has been diagnosed by a physician as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008) (citations omitted).

The subjective element necessary for a finding of a constitutional violation for denial of

---

[3] However, qualified immunity shields from liability government officials performing discretionary functions insofar as their conduct does not violate clearly established or constitutional rights which a reasonable person would have know. The Court engages in a two-part inquiry to determine whether (1) the plaintiff has demonstrated a constitutional violation, and (2) the right at issue was clearly-established at the time of the violation. *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Defendants did not explicitly raise qualified immunity in their Motion for Summary Judgment, but did raise the qualified immunity defense in their reply brief.

medical care requires an inmate to show that prison officials have a "sufficiently culpable" state of mind in denying medical care. *Jones*, 625 F.3d at 941 (citations omitted). "Deliberate indifference" to a serious medical need is required for a "sufficiently culpable" state of mind. *Id.* Deliberate indifference requires a state of mind similar to recklessness; it is more than mere negligence but less than acting with purpose or knowledge. *Id.* Thus, to prove deliberate indifference, a plaintiff must show that the official: (1) subjectively knew of a risk to the inmate's health, (2) drew the inference that a substantial risk of harm to the inmate existed, and (3) consciously disregarded that risk. *Id.*

Here, Defendants do not contest that Plaintiff has met the objective element of a sufficiently serious medical need with respect to both the staph infection and hip fracture, as both were diagnosed by medical professionals as needing treatment. The point of dispute therefore is whether Plaintiff has presented sufficient evidence to create a question of fact whether Defendants acted with deliberate indifference toward Plaintiff's serious medical needs with respect to his staph infection and hip injury.

Plaintiff's claim for denial of medical treatment with respect to the staph infection in his arm fails as a matter of law. The undisputed facts show that Defendants were not deliberately indifferent to Plaintiff's injury. Defendant's did not consciously disregard Plaintiff's injury, and Plaintiff was not denied medical treatment of the staph infection. To the contrary, the facts show that the infection was diagnosed by the jail nurse, and was treated with antibiotics. The jail doctor examined the infected arm. Plaintiff's infection was cured within a week to eight days of his arrival at the jail. Thus, it is clear that Defendants' treatment of Plaintiff's infection was immediate and effective. On the other hand, there is no evidence to show that a different course

of treatment was necessary or preferable, or that any appropriate treatment was withheld. Plaintiff's feeling that he needed to go to the hospital for his arm is not enough to create an issue of fact, particularly when the staph infection healed within a week to eight days after being treated at the jail. Moreover, Plaintiff's apparent complaint that he did not receive all of the bandages he wanted for his arm, even if true, does not rise to the level of a conscious disregard for his well being. Under these circumstances, Defendants are entitled to summary judgment on Plaintiff's claim for denial of medical treatment for his staph infection.

Plaintiff's claim for denial of medical treatment with respect to the hip injury allegedly sustained following the incident with Defendant Polverine also fails as a matter of law. Immediately after the incident, and during the following day, Plaintiff was ambulatory. When he complained of hip pain the following day, he was examined by the jail nurse. He was able to walk from his cell. Neither Plaintiff nor Defendants contend that there was a marked change in Plaintiff's behavior. Instead, all parties acknowledge that Plaintiff was confused and hallucinating both before and after the incident with Defendant Polverine. Thus, Plaintiff has failed to provide evidence of any signs Defendants could or should have headed, or that they were recklessly indifferent to, in not seeking additional medical treatment for Plaintiff on the 17th or 18th of July.[4]

Defendants also were not deliberately indifferent to Plaintiff's condition when it worsened on July 19. Plaintiff claims that by July 19, he was in severe pain and could no longer

---

[4]Even assuming that Plaintiff told Defendants that his hip was broken, it is reasonable for Defendants to have concluded that Plaintiff was mistaken, given that Plaintiff was confused and hallucinating prior to the incident with Defendant Polverine, and because Plaintiff was ambulatory for two days after the incident.

walk. At that point, the jail doctor examined Plaintiff. He sent Plaintiff to the hospital via ambulance for treatment. Thus, there is no evidence that Defendants turned a blind eye to a substantial risk to Plaintiff's health, once that risk became apparent. Summary judgment is awarded to Defendants on Plaintiff's claim for denial of medical treatment with respect to his hip injury.

      **B.**      <u>**Issues of Fact Surround Plaintiff's Section 1983 Claim For Excessive Force**</u>

Unlike Plaintiff's Section 1983 claims for denial of medical care, issues of fact preclude summary judgment on Plaintiff's excessive force claim brought under Section 1983. Plaintiff says that he was forcefully tackled by Defendant Polverine as punishment for using the intercom, and that he sustained serious injuries (including a broken hip) as a result. Defendants say that Plaintiff was not tackled in retribution, but rather that Defendant Polverine was attempting to prevent a confused Plaintiff from leaving his cell, when they both fell to the ground. The facts alleged by the parties present the Court with a classic "he said, she said" scenario. Under such circumstances, Rule 56 requires the Court to consider the facts in a light most favorable to Plaintiff. When the parties' evidence is considered in this light, genuine issues of material fact exist for the jury as to whether Plaintiff was subjected to excessive force while incarcerated in the Geauga County Jail.

Defendants' only argument to the contrary is that Plaintiff appears to have been acutely mentally unstable, such that Plaintiff's account of the facts is wholly unreliable. Defendants argue essentially that Plaintiff is so unreliable that it is acceptable under these unusual circumstances for the Court to judge Plaintiff's credibility on summary judgment. However, the law does not permit this. The law is clear that when "reviewing a summary judgment motion,

credibility judgments and weighing of the evidence are prohibited." *Schreiber v. Moe*, 596 F.3d 323, 333 (6th Cir.2010) (internal citations and quotation marks omitted); *Alspaugh v. McConnell*, 643 F.3d 162 (6th Cir. 2011) (issue of fact existed on prisoner's excessive force claim when prison officials maintained that the prisoner resisted after being taken to the floor, and the prisoner claimed that he did not resist). The Court is unaware of any exception carved out for circumstances in which the plaintiff sometimes has difficulty distinguishing reality from his hallucinations. Whether Plaintiff's account of the facts is to be believed is a question for the jury, as is the question of whether any excessive force caused Plaintiff's injuries, and, specifically, the injury to Plaintiff's hip.

Defendants argued that the remainder of Plaintiff's allegations depend on the outcome of his excessive force claim. Accordingly, those claims also are for a jury to decide.

## IV. CONCLUSION

For all of the reasons stated herein, summary judgment is awarded to Defendant Jonovich on all claims. Summary judgment is further awarded to all Defendants on Plaintiff's claims under 42 U.S.C. § 1983 for denial of medical treatment. Summary judgment is denied with respect to the remainder of Plaintiff's claims, because these claims present issues of fact for a jury to decide.

**IT IS SO ORDERED.**

_____
DONALD C. NUGENT
UNITED STATES DISTRICT COURT

DATED: August 19, 2014

12